**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEEL VALLEY SCHOOL DISTRICT, ) | |
| ) | |
| Plaintiff, ) | C.A. NO. 00-167 |
| ) | Judge Nora Barry Fischer |
| v. ) | |
| ) | |
| PETER KASICH, DORINE KASICH, ) | |
| AND THEIR DAUGHTER, KATIE K., ) | |
| ) | |
| Defendants. ) | |

BRIEF IN SUPPORT OF OBJECTION TO
PETITION FOR DISSOLUTION OF TRUST

AND NOW, comes the Plaintiff Steel Valley School District, by and through its counsel, Patricia R. Andrews, Esquire, and the law firm of Andrews & Price, files the within Brief in Support of Objection to Petition for Dissolution of Trust.

**Facts**

Plaintiff, Steel Valley School District, is a public school district existing and operating under the Pennsylvania Public School Code of 1949, as amended. 24 P.S. §1-101 *et. seq.* The School District's main source of funding is through public tax dollars, either at the local level through real estate and Act 511 taxes, at the state level through subsidies from the Pennsylvania Department of Education, or at the federal level through subsidies from the U.S. Department of Education.[1]

This case began as an administrative due process hearing under the Individuals with Disabilities Education Act. The Special Education Appeals Panel found that the special education program provided to Katie K. was inappropriate and awarded compensatory education. The District filed an appeal to this Court, challenging the

---

[1] This money is also derived from state and federal taxes.

Appeals Panel decision that the program was inappropriate and its award of compensatory education. The parents filed a counterclaim.

During a settlement conference with Judge Zeigler, the parties reached agreement to resolve the case. The School District agreed to provide, in lieu of the the awarded compensatory education, a structured fund in the amount of $50,000 to be placed into a Trust established by the family. It was agreed that the money would be used specifically for educational services. It was further agreed that the Defendant would be required to seek this Court's approval prior to releasing funds from the Trust. The purpose of this provision was to ensure that the money was being used for legitimate educational services and not simply being used for personal gain.

Katie K. has apparently exhausted her need for additional educational services. $39,000 remains of the $50,000 initially deposited in the Trust. Defendants' now Petition this Court to dissolve the Trust and give the remaining $39,000 directly to Katie K so that she can purchase a home. Purchasing a home is not a legitimate educational service and therefore, Defendants' Petition must be denied.

## Purpose of Compensatory Education

Courts have addressed the issue of the remedies that are available under the IDEA. One of the first cases to address the issue of remedies was School Committee of Burlington v. Department of Education, 471 U.S. 359 (1985). In that case, the U.S. Supreme Court determined that tuition reimbursement was an appropriate remedy for an IDEA violation. The Court reasoned that a parent who believed that their child was denied a free, appropriate public education (FAPE) could unilaterally place their child in a private school and seek tuition reimbursement. The Court held that if it

was determined that the child was denied FAPE, tuition reimbursement would be appropriate relief because it "merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." Id. at 370-371. The Court held that this satisfied the congressional intent to provide relief that remedies the deprivation of that right. Id. at 370.

The Third Circuit looked at whether that same rationale applied to compensatory education as an appropriate remedy under the IDEA in Lester H. v. Gilhool 916 F.2d 865 (3rd Cir. 1990). The Third Circuit relied upon the Eighth Circuit decision of Meiner v. State of Missouri, 800 F.2d 749 (1986) that held that compensatory education is also an appropriate remedy that does not require parents to "front the cost" of a private school placement. The court reasoned that compensatory education also cures the deprivation of a handicapped child's statutory rights, "thus providing a remedy which Congress intended to make available." Id. at 753. The Third Circuit agreed that Courts have the right to fashion an appropriate remedy to cure the deprivation of a child's right to a free, appropriate public education. Lester H. 916 F.2d at 873. An award of compensatory education "belatedly allows [the child] to receive the remainder of his free and appropriate public education." Id.

The Third Circuit further analyzed the history and purpose of compensatory education in M.C. v. Central Regional School District, 81 F.3d 389 (3rd Cir. 1996). The Court states that "a court award of compensatory education requires a school district to provide education past a child's twenty-first birthday to make up for any earlier deprivation." Id. at 395 (emphasis added).

What is clear from the Third Circuit's decisions is that compensatory education is meant to be educational services that allows the child to receive or make up for services that should have been provided by the District, but were not. The District provided Katie K. with a fund of money to obtain those "belated educational services." According to Defendants' Peition, Katie K. has used $11,000 for services. Defendants' request to use the compensatory education trust fund to purchase a house is neither an educational service nor a remedy that "belatedly allows her to receive the free, appropriate public education" that she was entitled to when she attended school. The District did not and would not have bought Katie K. a house as part of her education while she was in school. Purchasing a home would be relief that that remedies or cures the deprivation of FAPE and therefore, would not be a remedy intended under the IDEA. If Katie does not need any further educational services then it is clear that she is in the position that she would have been had she received the services from the District while she was in school.

This trust was never intended to be used at the pleasure of the student. In fact, during settlement discussions with Judge Zeigler, the District had grave concerns about how the money would be used. The District was assured at that point that this Court would oversee the expenses and would only approve those that were legitimate educational services. That is precisely why Defendants were required to seek Court approval prior to spending money from the trust. Now the family, who agreed at the time to placing the money in Trust for educational services, want to establish a new deal where Katie K. essentially receives $39,000 worth of taxpayer money to purchase a home for her own pleasure. That request is contrary to the agreement.

It is also contrary to public policy. It cannot be forgotten that this Trust account was established using public funds from a public school district. This money is taxpayer dollars. These tax dollars are intended to be used for the education of students. If Katie K. was denied FAPE while she was a student, then the Third Circuit has held that those taxpayer dollars can be used to provide her with a belated free, appropriate public education. Purchasing a former student a house is not an appropriate use of tax dollars in that it in no way is being used for bleated educational costs for a student. Because this trust was established through the use of public funds, if the money is no longer needed for educational purposes, the remaining $39,000 should revert to the public agency and not simply be given to the Defendant to be used as she pleases.

        Respectfully submitted,

        ANDREWS & PRICE


        BY:__/s/ Patricia R. Andrews_____
         Patricia R. Andrews, Esquire
         PA I.D. #80458
         Firm #549
         Suite 506
         1500 Ardmore Boulevard
         Pittsburgh, PA  15221
         (412) 243-9700

         Attorneys for Plaintiff Steel Valley
         School District